## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:                                **MDL #1626**

ACCUTANE PRODUCTS LIABILITY        CASE #8:04-MD-02523-T-30TBM
_____        **DISPOSITIVE MOTION**

KENNETH LOCKE, JUSTIN SISSEN,
MARY FARR AND LACY FECHNER
vs.                                #8:04-cv-02641-JSM-TBM
HOFFMANN-LA ROCHE INC. AND
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

_____

KEITH HUBBARD, KENNETH
CANNADY, ASHLEY GUYTON,
AND ADAM LEONARD

vs.                                #8:04-cv-02642-JSM-TBM
HOFFMANN-LA ROCHE INC.,
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

_____

GARRETT STEPHENS, PETER
DEMBOWSKI, MARK RODNITZKY,
PHILLIP JEFF BARNHILL, AND
ANDREW MESSICK

vs.                                #8:04-cv-02643-JSM-TBM
HOFFMANN-LA ROCHE INC.,
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

_____

JARED STEVENS
vs.                                #8:05-cv-01478-JSM-TBM
HOFFMANN-LA ROCHE INC.,
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.
AND ROCHE HOLDING, LTD.

_____

# TABLE OF CONTENTS

Table of Contents ....................................................................................................................i

Index of Authorities ...............................................................................................................ii

I.    Summary of Argument .................................................................................................1

II.   Background ...................................................................................................................1

III.  Summary Judgment Standard .......................................................................................2

IV.   *Havner* Determines Whether the Texas Plaintiffs Have Raised a Fact Issue
      On Causation .................................................................................................................3

V.    The Texas Plaintiffs Cannot Meet Their Burden of Proof ...........................................6

      A.    *Havner* Requires Epidemiology ........................................................................6

      B.    Plaintiffs Have No Epidemiology Showing Accutane Increases the Risk of IBD..............9

      C.    Plaintiffs' Collection of Non-Epidemiological "Proof" is No Evidence
            Under Texas Law .......................................................................................12

            1.    Case reports, Including "Re-Challenge" Case Reports ................................12

            2.    Other Indirect Proof ...................................................................................14

            3.    "Admissions" by Roche ..............................................................................15

VI.   Conclusion and Prayer ................................................................................................16

Certificate of Service ...........................................................................................................19

# TABLE OF AUTHORITIES

**Cases**        **Page No.**

*Austin v. Kerr-McGee Refining Corp.*, 25 S.W.3d 280 (Tex. App. – Texarkana 2000, no pet. h.) ... ...............................................................................................................11

*Ayres v. Sears Roebuck & Co.*, 789 F.2d 1173 (5th Cir. 1986) .......................................5

*Bartley v. Euclid, Inc.*, 158 F.3d 261 (5th Cir. 1998), *vacated*, 169 F.3d 215 (5th Cir. 1999) *subsequent appeal*, 180 F.3d 175 (5th Cir. 1999)...................................................5

*Black v. Food Lion, Inc.*, 171 F.3d 308 (5th Cir. 1999)..................................................4

*Brookshire Bros. Inc. v. Smith*, 176 S.W.3d 30 (Tex. App. — Houston [1[st] Dist.] 2005. rev. denied), *cert. denied*, 127 S.Ct. 256 (2006)...........................................11, 15

*Burton v. Wyeth-Ayerst Laboratories*, No. 3:99-CV-0305-G. (N.D. Tex. April 9, 2007) (Slip Op.) ... ..................................................................................................................4

*CBS Broadcasting, Inc. v. Echostar Communications Corp.*, 450 F.3d 505, n. 24 (11th Cir. 2006) ...................................................................................3

*Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814 (W.D. Tex. 2005) ............................4, 5, 6

*Chapman v. American Cyanamid Co.*, 861 F.2d 1515 (11th Cir. 1988) .......................................5

*Copley v. Smith & Nephew, Inc.*, No. H-97-2910, 2000 WL 223404 at *7 (S.D. Tex. Feb. 1, 2000 (unpublished)..............................................................................4

*Current v. Atochem N. Am., Inc.*, No. W-00-CV-332, 2001 (WL 1875950, at *1 W.D. Tex. Dec. 17, 2001) (unpublished)........................................................................4

*Daniels v. Lyondell-Citgo Refining Co.*, 99 S.W.3d 722 (Tex. App. – Houston [14[th] Dist.] 2003, no pet. h.) ..................................................................................11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)...........................................3

*E.I. DuPont de Nemours v. Robinson*, 923 S.W.2d 549 (Tex. 1995) .............................................3

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ...............................................................................3

*Exxon Corp. v. Makofski*, 116 S.W.3d 176 (Tex. App. – Houston [14[th] Dist.] 2003, rev. denied) ..........................................................................................................11, 15

*Exxon Mobil Corp. v. Altimore*, __ S.W.3d __, 2006 WL 3511723 (Tex. App. – Houston [14[th] Dist.] Dec. 7, 2006, no pet. h.) ..........................................................12

*Frias v. Atlantic Richfield Co.*, 104 S.W.3d 925 (Tex. App. – Houston [14th Dist.] 2003, no pet. h.) .. ...............................................................................................................11

*Formosa Plastics Corp. v. Presidia Eng'rs & Contractors, Inc.*, 960 SW.2d 41 (Tex. 1998)..........................................................................................................2

*Hamburger v. State Farm Mutual Auto. Ins. Co.*, 361 F.3d 875 (5th Cir. 2004) ...........................5

*Hickson Corp. v. Northern Crossarm Co., Inc.,* 357 F.3d 1256 (11th Cir. 2004) ...........................2

*In re "Agent Orange" Product Liability Litigation*, 597 F. Supp. 740 (E.D.N.Y. 1984), *aff'd.*, 818 F.2d 145 (2nd Cir. 1987)...................................................................16

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717 (3rd Cir. 1994), *cert. denied sub. nom General Elec. Co. v. Ingram*, 513 U.S. 1190 (1995) ........................................................5

*Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 714 (Tex. 1997)......................................1, 3, 4, 5, 6, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17

*Minnesota Min. and Mfg. Co. v. Atterbury*, 978 S.W.2d 183 (Tex. App. – Texarkana 1998, rev. denied) ...........................................................................................................14

*Mo Pac., R.R. Co. v. Navarro*, 90 S.W.3d 747 (Tex. App. – San Antonio 2002, no pet. h) ............................................................................................................11

*Mobil Oil Corp. v. Bailey*, 187 S.W.3d 265 (Tex. App. – Beaumont, 2006, rev. denied*)*..............10

*Revels v. Novartis Pharmaceuticals Corp.*, 1999 WL 644732, *3-*5 (Tex. App. – Austin Aug. 20, 1999, rev. denied) (unpublished) ..............................................................................12, 13

*Taylor v. Bristol Myers Squibb Co.*, No. 5:01-CV-166-C, 2004 WL 2058796, (N.D. Tex. Sept. 15, 2004) (unpublished)...........................................................................5

*Torres v. Oakland Scavergh Co.*, 487 U.S. 312 (1988) .................................................................5

*Union Pump Company v. Allbritton*, 898 S.W. 2d 773 (Tex. 1995)................................................2

Statutes & Rules

67 F.R. 72555 (Dec. 6, 2002)........................................................................................................16

Fed. R. Civil P. 56(c) ................................................................................................................1, 2, 18

Rules of Decision Act, 28 U.S.C. §1652 ......................................................................................3

<u>Miscellaneous</u>

David S. Moore & George P. McCabe, Introduction to the Practice of Statistics 202
(2d ed. 1993) ...................................................................................................................................8

Kenneth R. Reinberg, *Civil Litigation in the Twentieth-First Century:
A Panel Discussion*, 59 BROOK L. REV. 1199 (1993) ..................................................................17

Rochelle Cooper Dreyfuss, *Is Science a Special Case? The Admissibility of
Scientific Evidence After Daubert v. Merrell Dow,* 73 TEX L. REV. 1779, (1995).......................16

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AS TO
TEXAS PLAINTIFFS BASED ON NO EVIDENCE OF CAUSATION
UNDER TEXAS SUBSTANTIVE LAW
(With Supporting Memorandum of Law)**

Defendants Hoffmann-La Roche Inc. and Roche Laboratories Inc. ("Roche") ask the

Court to grant them summary judgment under Federal Rule of Civil Procedure 56(c) as to all

claims of Kenneth Cannady, Mary E. Farr, Lacy Fechner, Andrew Messick, Jared Stevens, and

Beth Parker on behalf of Kenneth Locke, deceased (the "Texas Plaintiffs").

## I.   SUMMARY OF ARGUMENT

The Texas Plaintiffs claim that a drug caused them to develop a condition that also occurs

for unknown reasons in people who did not take the drug.  The Texas Supreme Court has

determined that to raise a fact issue on causation, a plaintiff in this position must produce reliable

epidemiological studies showing a statistically significant doubling of the risk of the condition in

drug-exposed individuals.  *Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 714 (Tex.

1997).  Federal courts have held that *Havner* is the substantive law of Texas.  The Texas

Plaintiffs admittedly do not have any epidemiological evidence.  This Court therefore should

grant summary judgment for Roche with respect to their claims.[1]

## II.  BACKGROUND

Inflammatory Bowel Disease ("IBD") primarily refers to two specific disorders

characterized by inflammation of the gastrointestinal tract:  ulcerative colitis and Crohn's

disease.  December 13, 2006 Deposition of Ronald P. Fogel, M.D. ("Fogel Dep.") (Exhibit 1) at

95:12-15.  Each of the Texas Plaintiffs claims to have developed one of these disorders some

---

[1]    Roche has argued by separate motion that the unreliability of Plaintiffs' causation proof also
renders it inadmissible under federal law.  Many of the *Havner* evidentiary requirements also are
reflected in federal case law governing admissibility.   But even assuming the federal
admissibility standards set a lower bar than *Havner*, the Texas Plaintiffs are bound by that
decision for the reasons set out below.

period of time (over seven years in one case) after discontinuing Roche's prescription acne medication Accutane.[2]  These cases have been on file more than three years.  Roche has deposed Plaintiffs' sole causation expert, Dr. Ronald Fogel.  Adequate time for discovery has passed, and this motion is being filed in accordance with the Court's deadline for dispositive motions.

## III. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the record shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Hickson Corp. v. Northern Crossarm Co, Inc.*, 357 F.3d 1256, 1259 (11th Cir. 2004).  The Texas Plaintiffs sue Roche under a variety of legal theories, all of which require them to prove that Accutane was a cause-in-fact of their IBD.  *Union Pump Co. v. Allbritton*, 898 S.W.2d 773, 775 (Tex. 1995) (negligence and strict liability); *Formosa Plastics Corp. v. Presidia Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47 (Tex. 1998) (fraud).

---

[2]   **Mary Farr** ingested Accutane from February through June 1999 and was diagnosed with Crohn's disease in June 2002.  Tarrant Dermatology Consultants records pp. MF-TDC-000004 and 000007 (Exhibit 2); Farr Deposition at 161:5-8, 18-20; 165:13-24 (Exhibit 3). Harris Methodist Hospital records, pp. MF-HM-14-16 (Exhibit 4) .

**Lacy Fechner** ingested Accutane from June through November 1996 and was diagnosed with Crohn's disease in October 1998.  Dr. James Childs' records produced by Plaintiff,p. LF-JCpltf2-000021 and Dr. James Childs' records, p. LF-JC-000002 (Exhibit 5).  Saint Joseph's Hospital records, pp. LF-SJH-000427 (Exhibit 6).

**Kenneth Cannady** claims to have taken Accutane for three months in 1993, although there are no pharmacy or medical records confirming this; he was diagnosed with ulcerative colitis in December 1994.  Cannady Rog. Resp. at No. 15, pp. 12-13 (Exhibit 7).  Texas Digestive Disease Consultants, pp. KC-TDD-000040 (Exhibit 8).

**Andrew Messick** took Accutane from October 1994 through April 1995 and was diagnosed with ulcerative colitis in November 2002.  Messick Dep. at 252:8-10; 259:6-15 (Exhibit 9). North Hills Hospital, PP. AM-NHH-000005-6 (Exhibit 10).

**Jared Stevens** took Accutane from September 1999 through January 2000 and was diagnosed with ulcerative colitis in July 2002.  Steven's Fact Sheet at p. 23, Letter B (Exhibit 11).  Wadley Regional Medical Center, pp. JMS-WRM-000023 (Exhibit 12).

**Kenneth Locke** (deceased) took Accutane in December 1998.  He was diagnosed with Crohn's disease in February 1999.  Deposition of Dr. Thomas Lyles at 48:5-13; 49:19-25; 50:1-7 (Exhibit 13); Deposition of Dr. Allen Hornell at 13:2-4; 18:15-17 (Exhibit 14).  East Texas Medical Center, pp. KL-ETM-000014-15 (Exhibit 15).

Roche contends that Plaintiffs cannot meet their burden of proving causation.  When the defendant challenges the plaintiff's ability to prove an essential element of his claim, the plaintiff, "[t]o survive summary judgment . . . must come forward with evidence sufficient to withstand a directed verdict motion."  *Id.* at 1260.  The Court must view all evidence presented in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  *Id.*  Inferences based on speculation and conjecture, however, are not reasonable.  *CBS Broadcasting, Inc. v. Echostar Communications Corp.*, 450 F.3d 505, 517, n. 24 (11th Cir. 2006).

## IV. *HAVNER* DETERMINES WHETHER THE TEXAS PLAINTIFFS HAVE RAISED A FACT ISSUE ON CAUSATION

Because this Court's jurisdiction over the Texas Plaintiffs is based on diversity of citizenship, Texas substantive law governs their claims.  Rules of Decision Act, 28 U.S.C. § 1652; *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  The *Havner* standards properly are regarded as Texas substantive law for two reasons.

First, *Havner* is not the Texas equivalent of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and only indirectly bears on the evidentiary (and therefore federally governed) question of the admissibility of expert testimony.  The Texas Supreme Court adopted general *Daubert*-like standards governing admissibility two years before *Havner*, in *E. I. DuPont de Nemours v. Robinson,* 923 S.W.2d 549 (Tex. 1995).  *Havner* addressed a related but separate question—what types of evidence are and are not legally sufficient to raise a fact issue on causation when the plaintiff claims a drug caused a medical condition that also occurs naturally in people who did not take the drug?  This issue is independent from admissibility.  *Havner*, 953 S.W.2d at 712 ("If for some reason such [unreliable] testimony were admitted without objection, would a reviewing court be obliged to accept it as some evidence?  The answer is no.").

In a case governed by Texas substantive law, the federal district court for the Western District of Texas recently agreed that *Havner* is substantive law, regardless of any overlap with the admissibility inquiry:

> [W]hether a Plaintiff's proffered evidence amounts to some evidence (or, in other words, legally sufficient evidence) of causation is a question of Texas substantive law, and thus *Havner* controls on that issue.  If evidence is admissible under federal procedural law but fails to constitute "some evidence" under Texas substantive law, the Plaintiffs' victory on the admissibility question would be a hollow one, as the evidence would be deemed insufficient as a matter of law to survive summary judgment.

*Cano v. Everest Minerals Corp.*, 362 F. Supp. 2d 814, 821-22 (W.D. Tex. 2005) (internal footnote omitted).  Citing *Cano*, the district court for the Northern District of Texas recently held:

> This court agrees with the conclusion reached by other federal courts that have addressed the issue:  *Havner's* standards are substantive, not procedural.

*Burton v. Wyeth-Ayerst Laboratories,* No. 3:99-CV-0305-G. (N.D. Tex. April 9, 2007), Slip Op. at 23, n. 12 (not yet available on Westlaw; copy attached as Exhibit 16).

Many other federal courts have applied *Havner* as the substantive law of Texas.  *See Black v. Food Lion, Inc.*, 171 F.3d 308, 310 (5th Cir. 1999) (expert's speculation about cause of plaintiff's fibromyalgia was insufficient under *Havner*); *Current v. Atochem N. Am., Inc.*, No. W-00-CV-332, 2001 WL 1875950, at *1 (W.D. Tex. Dec. 17, 2001) (unpublished) (in arsenic exposure case, court granted summary judgment for defendants because plaintiffs "have failed to meet the *Havner* burden"); *Copley v. Smith & Nephew, Inc.*, No. H-97-2910, 2000 WL 223404,

4

at *7 (S.D. Tex. Feb. 1, 2000) (unpublished) (in spinal rod case, court noted that standard for causation in products liability cases is governed by Texas law, citing *Havner*).[3]

Second, while sufficiency of the evidence is governed by federal law, courts have recognized that state law governs "the kind of evidence that must be produced to support a verdict." *Hamburger v. State Farm Mutual Auto. Ins. Co.*, 361 F.3d 875, 884 (5th Cir. 2004) (quoting *Ayres v. Sears Roebuck & Co.*, 789 F.2d 1173, 1175 (5th Cir. 1986), *abrogated on other grounds*, *Torres v. Oakland Scavergh Co.*, 487 U.S. 312 (1988).  Thus in *Hamburger*, the Fifth Circuit held that state law determines whether expert testimony is necessary to prove causation. *Id; see also Chapman v. American Cyanamid Co.*, 861 F.2d 1515, 1519 (11th Cir. 1988) (court noted that Georgia law allowed plaintiff to prove product identification through circumstantial evidence); *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 751-52 (3rd Cir. 1994), *cert. denied sub. nom General Elec. Co. v. Ingram*, 513 U.S. 1190 (1995) (Pennsylvania rule requiring medical experts to testify to a reasonable degree of medical certainty was substantive law because it did not relate solely to admissibility but bore on the plaintiffs' burden of proof).

---

[3]  One federal district court declined to apply Havner to exclude evidence.  *Taylor v. Bristol Myers Squibb Co.*, No. 5:01-CV-166-C, 2004 WL 2058796, at *1 (N.D. Tex. Sept. 15, 2004) (unpublished).  But the court specifically distinguished the issue before it - the admissibility of expert testimony - from the issue of whether proffered evidence is adequate to establish causation (the issue addressed in *Havner*).  As the *Cano* court noted, the Fifth Circuit also addressed *Havner* in a subsequently vacated opinion.  *Bartley v. Euclid, Inc.*, 158 F.3d 261 (5th Cir. 1998), *vacated*, 169 F.3d 215 (5th Cir. 1999), *subsequent appeal*, 180 F.3d 175 (5th Cir. 1999).  The Court looked to *Havner* to determine what evidence is sufficient to satisfy the preponderance of evidence burden of proof but stated in a footnote that "[a]rguably, the definition of the applicable burden of proof is procedural rather than substantive, and therefore controlled by federal rather than state law."  *Bartley*, 158 F.3d at 273, n.9.  Nevertheless, "[a]ssuming, without deciding, that *Havner*'s rule controls," the Court found that the evidence before the jury satisfied it.  *Id.* at 273.  In *Cano*, the district court dismissed the "arguably procedural" comment because the opinion was vacated, the language was dicta, and the court's offhand reasoning lacked merit in any event.  *Cano*, 362 F. Supp. 2d at 822 n.13.  *See also Bartley*, 158 F.3d at 281-283 (DeMoss, J., dissenting) (because the quality and quantum of evidence necessary to establish a cause of action is governed by state law, *Havner* is the "guiding star" in determining whether the evidence "adequately establishes a prima facie case according to the laws of the state of Texas.").

As the following discussion will make clear, *Havner* spells out exactly what kind of evidence a plaintiff must provide to raise a fact issue on causation in a case like this one. However one categorizes the *Havner* requirements, a Texas plaintiff litigating in federal court should have to meet them just as a plaintiff litigating in Texas state court would.  *Cano*, 362 F.Supp.2d at 821-22.

## V.   THE TEXAS PLAINTIFFS CANNOT MEET THEIR BURDEN OF PROOF

### A.   *Havner* Requires Epidemiology

Before evaluating the *Havner* plaintiffs' causation proof, the Texas Supreme Court described the parameters of their claim and framed the legal issue posed by that claim:

> The Havners do not contend that all limb reduction birth defects are caused by Bendectin or that Bendectin always causes limb reduction birth defects . . . . Experts for the Havners and Merrell Dow . . . agree that the cause of a large percentage of limb reduction birth defects is unknown.  ***Given these undisputed facts, what must a plaintiff establish to raise a fact issue on whether Bendectin caused an individual's birth defect?***

*Havner*, 953 S.W.2d at 714 (emphasis added).

In drug or chemical exposure cases, causation often "is discussed in terms of general and specific causation."  *Id.*  General causation is whether the substance can cause the condition; specific causation is whether it did cause the plaintiff's condition.  *Id.*  In some cases, the *Havner* Court observed, "controlled scientific experiments can be carried out to determine if a substance is capable of causing a particular injury or condition, and there will be objective criteria by which it can be determined with reasonable certainty that a particular individual's injury was caused by exposure to a given substance." *Id.*  But "in many toxic tort cases, direct experimentation cannot be done, and there will be no reliable evidence of specific causation." *Id.*

In such a case, plaintiffs "may attempt to demonstrate that exposure to the substance at issue increases the risk of their particular injury." *Id.* Proof of increased risk is not direct proof of causation. Rather:

> The finder of fact is asked to infer that because the risk is demonstrably greater in the general population due to exposure to the substance, the claimant's injury was more likely than not caused by that substance. Such a theory concedes that science cannot tell us what caused a particular plaintiff's injury. It is based on a policy determination that when the incidence of a disease or injury is sufficiently elevated due to exposure to a substance, someone who was exposed to that substance and exhibits the disease or injury can raise a fact question on causation.
> *Id.*

Thus, the *Havner* Court proceeded to consider "the use of epidemiological studies and the 'more likely than not' burden of proof." *Id.* Epidemiological studies "examine existing populations to attempt to determine if there is an association between a disease or condition and a factor suspected of causing that disease or condition." *Id.* After exhaustively reviewing what various courts and commentators had to say on the subject, the Court held, "[w]e are persuaded that properly designed and executed epidemiological studies may be part of the evidence supporting causation in a toxic tort case and that there is a rational basis for relating the requirement that there be more than a 'doubling of the risk' to our no evidence standard of review and to the more likely than not burden of proof." *Id.* at 716-17.

The Court illustrated its reasoning as follows: If a condition occurs naturally in six out of 1,000 people, but occurs in nine out of 1,000 drug-exposed people, "it is still more likely than not that causes other than the drug were responsible for any given occurrence of the disease since it occurs in six out of 1,000 individuals anyway." *Id.* at 718. But if twelve out of 1,000 drug-exposed individuals develop the condition "it may be ***statistically*** more likely than not that a given individual's disease was caused by the drug." *Id.* (emphasis in original).

In short, when a plaintiff's condition could be drug-induced but also could have occurred by chance, he cannot meet the more likely than not causation burden unless he provides

epidemiological evidence showing that taking the drug more than doubles the risk of developing the condition. Moreover, epidemiology is only the first step: "To raise a fact issue on causation . . . a claimant must do more than simply introduce into evidence epidemiological studies that show a substantially elevated risk;" he must also show that he is similar to those in the studies in terms of dose, duration of exposure, and timing of onset of injury. *Id.* at 720 (emphasis added). And because epidemiology is only circumstantial proof of causation, the *Havner* Court cautioned that one positive study is not enough. *Id.* at 727 ("[A]n isolated study finding a statistically significant association between Bendectin and limb reduction defects would not be legally sufficient evidence of causation."). It explained:

> Particularly where, as here, direct experimentation has not been conducted, it is important that any conclusions about causation be reached only after an association is observed in studies among different groups and that the association continues to hold when the effects of other variables are taken into account.

*Havner*, 953 S.W.2d at 727 (citing DAVID S. MOORE & GEORGE P. MCCABE, INTRODUCTION TO THE PRACTICE OF STATISTICS 202 (2d ed. 1993)). [4]

---

[4]   The Court also established rigorous standards for epidemiological proof. For example, a finding of an increased risk must meet the criteria applied by scientists for statistical significance. *Id.* at 722-24. The study must relate to the specific condition at issue. *Id.* at 725 (discounting studies of birth defects other than limb reduction). The design and conduct of the study must be reliable. *Id.* at 724 (discussing sample size, power, confounding variables, and selection bias). A court should be skeptical of a study that has not been published in peer-reviewed literature. *Id.* at 727. And epidemiological studies showing a doubling of the risk are not enough if "there are other plausible causes of the injury or condition that could be negated" but the plaintiff fails to offer evidence excluding them "with reasonable certainty." *Id.* at 720.

These issues do not bear extended discussion in this case, however, as the Texas Plaintiffs have no epidemiology at all. It is also irrelevant in this case that the Supreme Court left open the question of "whether epidemiological evidence with a relative risk less than 2.0, coupled with other credible and reliable evidence, may be legally sufficient to support causation," *id.* at 719. The Texas Plaintiffs cannot quantify *any* increase in the risk of IBD allegedly associated with Accutane.

**B.    Plaintiffs Have No Epidemiology Showing Accutane Increases the Risk of IBD**

With the exception of the drugs and injuries involved, this case presents the exact issue

decided in *Havner*.  As in that case, it is not possible to conduct a "controlled scientific

experiment" that will generate "objective criteria by which it can be determined with reasonable

certainty" that a particular case of IBD was caused by Accutane.  Plaintiffs' causation expert, Dr.

Fogel, admits:

> I do not think that Accutane causes a specific type of inflammatory
> bowel disease that is different from the ulcerative colitis or
> Crohn's disease that we see in other patients who have not taken
> Accutane.

Fogel Dep. at 170:24-171:2; *see Havner,* 953 S.W.2d at 714.

Moreover, as in *Havner*, Dr. Fogel does not contend that Accutane always causes IBD.

> Q:   You would agree that millions of people have used Accutane and have not
> developed [IBD], true?
>
> A:   That is correct.

Fogel Dep. at 116:12-14.

Nor does he claim that all cases of IBD are caused by Accutane:

> Q:   You agree that [IBD] occurs in people who have never used Accutane,
> true?
>
> A:   Correct.

*Id.* at 118:1-4.

In fact, Dr. Fogel concedes that "[b]ased on our current understanding, our current

knowledge, we often do not know what causes inflammatory bowel disease in many patients,"

and that there are no specific identifiable risk factors in the vast majority of IBD patients.  Fogel

Dep. at 113:4-6; 115:15-18.  Dr. Fogel further admits that, given the background rate of IBD,

one would expect to see sixteen to twenty coincidental cases per year in Accutane users, and that

if one considers the total population of Accutane users since it has been on the market (which he

testified he believed to be between 11 and 12 million), one would expect to see approximately

2,400 coincidental cases of IBD in Accutane users.  Fogel Dep. at 178:10-13; 179:14-21.

Because Plaintiffs' IBD could be coincidental rather than Accutane-induced, and no

experiment can tell us the cause of any Plaintiff's IBD, *Havner* requires Plaintiffs to produce

reliable epidemiological studies showing a statistically significant doubling of the risk of IBD in

Accutane users.  But Dr. Fogel admits that there are no such studies:

> Q:  Would you agree with me that there is no epidemiological study that
> demonstrates that a person taking Accutane is more than twice as likely to
> develop IBD than a person who has not taken Accutane?
>
> A:  I can't answer that question because there are no epidemiologic studies.
> We don't know with certainty what the numerator is.  We don't know
> what the denominator is in the Accutane population.
>
> \*     \*     \*
>
> Q:  Doctor, as you sit here today, you cannot tell me that there is a statistically
> significant increased risk of IBD among patients who have taken
> Accutane, can you?
>
> [objection omitted]
>
> A:  The data is not available to conclude what the risk is.

Fogel Dep. at 183:12-19; 185:8-14.

The lack reliable epidemiology showing that Accutane doubles the risk of IBD is fatal to the

Texas Plaintiffs' claims under Texas law.  *Havner*, 953 S.W.2d at 724-730 (refusing to consider

non-epidemiological data as "some evidence" of causation and dismissing as no evidence

epidemiological studies that did not demonstrate a statistically significant doubling of the risk of

the particular birth defect at issue ); *Mobil Oil Corp. v. Bailey*, 187 S.W.3d 265, 274-275, (Tex.

App. – Beaumont 2006, rev. denied) (reversing and rendering judgment for plaintiffs; one

epidemiological study regarding asbestos and atypical lung cancer not sufficient and plaintiff's

experts had not substantiated that asbestos and heavy smoking had a "synergistic" effect);

10

*Brookshire Bros. Inc. v. Smith*, 176 S.W.3d 30, 37-39 (Tex. App. – Houston [1st Dist.] 2005, rev.

denied), *cert. denied*, 127 S.Ct. 256 (2006) (reversing and rendering judgment on jury verdict for

plaintiff where plaintiff's expert "did not refer to a single epidemiological study or scientific

article to prove that exposure to commercial cleaners can cause [reactive airways dysfunction

syndrome]"); *Daniels v. Lyondell-Citgo Refining Co.*, 99 S.W.3d 722 (Tex. App. – Houston [14th

Dist.] 2003, no pet.) (affirming no-evidence summary judgment against plaintiff in benzene

exposure case where three epidemiological studies showed increased risk but not a doubling of

the risk); *Exxon Corp. v. Makofski*, 116 S.W.3d 176, 182-187 (Tex. App. – Houston 2003, rev.

denied) (reversing and rendering judgment on jury verdict for plaintiff where epidemiological

studies did not address specific type of leukemia at issue or showed statistically insignificant

findings); *Frias v. Atlantic Richfield Co.*, 104 S.W.3d 925, 929-31 (Tex. App. – Houston [14th

Dist.] 2003, no pet.) (affirming no evidence summary judgment for defendant where

epidemiological study did not show that confidence level was at least 95% and because limited

studies of shoe factory workers did not "equate to an association that has been observed in

studies among different groups such that it would continue to hold when the effects of other

variables are taken into account."); *Mo. Pac., R.R. Co. v. Navarro*, 90 S.W.3d 747, 749 (Tex.

App. — San Antonio 2002, no pet. h.) (reversing and rendering judgment on jury verdict for

plaintiff where epidemiological studies did not show a statistically significant increased risk of

multiple myeloma and rejecting experts' "re-analysis" of studies); *Austin v. Kerr-McGee*

*Refining Corp.*, 25 S.W.3d 280 (Tex.App. — Texarkana 2000, no pet. h.) (affirming summary

judgment for defendant where plaintiff's epidemiological proof did not address the specific type

of leukemia at issue).

**C.   Plaintiffs' Collection of Non-Epidemiological "Proof" is No Evidence Under Texas Law**

Courts applying Texas law repeatedly have rejected attempts to substitute various types of circumstantial "proof" for reliable epidemiology.

**1.   Case Reports, Including "Re-Challenge" Case Reports**

As previously discussed, when a condition occurs in non-drug exposed individuals, anecdotal reports that it occurred in a drug-exposed individual are meaningless because one would expect a number of drug-exposed persons to develop the condition purely by coincidence. *Havner* held that without a systematic comparison of drug-exposed persons to a control group of non-exposed individuals that shows a doubling of the risk, one cannot say it is more likely than not that a given instance of the condition in a drug-exposed individual was caused by the drug. *Havner*, 953 S.W.2d at 718 (even if risk of condition rises to 9 out of 1,000 in drug-exposed individuals from 6 out of 1,000 in non-drug exposed individuals, it still is more likely than not that a drug-exposed individual's condition occurred by chance).

Numerous courts throughout the nation have rejected case reports as a reliable basis for a causation opinion, as discussed in Roche's Motion to Exclude Experts General Causation and Labeling Testimony of Ronald Fogel, MDL Doc. No. 411.  These decisions are in accord with Texas law.  *Havner*, 953 S.W.2d at 720 ("[P]hysicians following scientific methodology would not examine a patient or several patients in uncontrolled settings to determine whether a particular drug has favorable effects, nor would they rely on case reports to determine whether a substance is harmful."); *Exxon Mobil Corp. v. Altimore*, __ S.W.3d ___, 2006 WL 3511723 (Tex. App. – Houston [14[th] Dist.]Dec. 7, 2006, no pet. h.) ("As they are not scientifically reliable, case reports cannot support a finding that risk of harm to appellee was foreseeable to Exxon as early as 1964."); *Revels v. Novartis Pharmaceuticals Corp.*, 1999 WL 644732, *3-*5 (Tex. App. – Austin Aug. 20, 1999, rev. denied) (not designated for publication) (case reports

were not reliable evidence of causation even when FDA found that, in the aggregate, they suggested that Parlodel "may be the cause" of serious adverse experiences).

The same reasoning applies to the so-called "rechallenge" case reports in which a patient allegedly experiences symptoms while taking the drug, stops having symptoms when the drug is stopped, and starts having them again when drug use is resumed. *See* Fogel Dep. at 215:11-12. These reports still are uncontrolled. *See Revels*, 1999 WL 644732 at *5 (rejecting a challenge/re-challenge case report as "but one single, uncontrolled experiment"). Dr. Fogel opines that "one or two" such reports "may be coincidental," but three (out of the 11-12 million people he estimated used Accutane) are "strong and compelling evidence" of causation. Report of Dr. Ronald P. Fogel, M.D. ("Fogel Rep.") (Exhibit 17). at 7. This opinion is not based on any identifiable methodology, and employs the same flawed reasoning that *Havner* rejected (*i.e.* inferring causation from anecdotal reports without accounting for the possibility that chance alone could explain them).

In addition, even if one treated this handful of anecdotal reports as a "study," it would not be probative of whether Accutane caused the Texas Plaintiffs' IBD. "A claimant must show that he or she is similar to those in the studies." *Havner*, 953 S.W.2d at 720. "This would include proof that the injured person was exposed to the same substance, that the exposure or dose levels were comparable to or greater than those in the studies, that the exposure occurred before the onset of injury, and that the timing of the onset of injury was consistent with that experienced by those in the study." *Id.* Dr. Fogel did not evaluate these issues. And the Texas Plaintiffs plainly are not similar to the patients in the re-challenge case reports because they do not fit the "challenge/dechallenge/rechallenge" pattern. The Texas Plaintiffs allegedly developed IBD after stopping the drug – in one case, over seven years later.

13

## 2.   Other Indirect Proof

*Havner* gave short shrift to the other types of indirect proof on which the Texas Plaintiffs rely.  For example, "scientific methodology would not rely on animal studies, standing alone, as conclusive evidence that a substance is a teratogen in humans."  *Havner*, 753 S.W.2d at 729. Such studies are particularly suspect when the expert can offer "no explanation of how the very high dosages could be extrapolated to humans."  *Id.  See also Minnesota Min. and Mfg. Co. v. Atterbury*, 978 S.W.2d 183, 199 (Tex. App. – Texarkana 1998, rev. denied) ("The [*Havner*] court seems unimpressed with animal studies altogether; thus, it would be fair to say that animal studies, standing alone, are not likely to support a finding of causation.").

Dr. Fogel's extrapolation from in vitro (test tube) studies is likewise insufficient under *Havner*.  Compare, *e.g.*, Fogel Dep. at 195:23-199:6 (referring to in vitro studies showing increased permeability of an intestinal cell line derived from tumor cells) with *Havner*, 953 S.W.2d at 729 (rejecting extrapolation from test tube experiments showing that one of the chemicals in Bendectin caused adverse effects when applied directly to limb bud cells). Identifying "possible mechanisms" by which a drug could cause a condition is speculation, not proof that raises a fact issue.  Compare Fogel Rep. at 5 ("A review of literature identifies a number of mechanisms by which [Accutane] can induce/exacerbate the course of patients with [IBD].") with *Havner*, 953 S.W.2d at 729 (rejecting testimony that chemical in Bendectin "can" interfere with chondrogenesis, the process by which cells turn into cartilage, as reliable evidence of causation).  And "biological plausibility," *e.g.* Fogel Dep. at 219: 10-16, is not proof of causation at all; it is merely one of the "Bradford-Hill" criteria for evaluating the strength of an association already observed in an epidemiological study.  *Havner*, 953 S.W.2d at 718, n. 2.

14

### 3.   "Admissions" by Roche

Finally, Dr. Fogel relies on internal Roche documents, including "causality assessments" for the proposition that Roche "admits" that Accutane causes IBD.  *E.g.* Fogel Rep. at 7 ("Roche's own internal documents and analysis acknowledge that Roche has concluded that its drug Accutane, is a known cause of Inflammatory Bowel Disease.").  But leaving aside his mischaracterization of them, the documents he points to do not contain any new scientific information; they simply discuss or evaluate the same case reports which themselves are no evidence of general causation.

Moreover, the Texas Plaintiffs cannot use these documents to lower their burden of proof under Texas law.  As explained in Roche's Motion to Exclude Evidence Regarding Causality Assessments**,** MDL Doc. No. 408, which is incorporated herein by reference, a positive causality assessment is based on a regulatory standard ("reasonable possibility") designed to detect safety signals, not to evaluate causation for scientific purposes.  MDL Doc. No. 408 at 1-5.  *Havner* and the Texas courts following it have rejected attempts to lower the bar for scientific proof in the courtroom.  *E.g.* 953 S.W.2d at 724 ("We think it unwise to depart from the methodology that is at present generally accepted among epidemiologists . . . Accordingly, we should not widen the boundaries at which courts will acknowledge a statistically significant association beyond the 95% level to 90% or lower values."); *Brookshire Bros.*, 176 S.W.3d at 38 ("Dr. Friedman's extensive reliance on the MSDS [material safety data sheet] and warning labels was . . . insufficient because neither the MSDS nor the warning labels, standing alone, provide the type of specific, detailed showing of scientific reliability required to accord evidentiary value to an expert's opinion.").

These cases recognize that regulatory standards governing when precautionary action is warranted are lower than legal standards for determining causation.  *E.g. Makofski*, 116 S.W.3d

at 188 ("[I]t may be appropriate for the EPA to protect people from chemical exposure on weak evidence that it will cause any harm, but that does not make it equally appropriate to impose a judgment of several million dollars on weak evidence that a defendant caused any harm.").  The FDA also recognizes the distinction.  In explaining why it added a warning to certain over-the-counter products, it stated that its "decision to act in an instance such as this one need not meet the standard of proof required to prevail in a private tort action."  Labeling of Diphenhydramine-Containing Drug Products for Over-the-Counter Human Use, 67 F.R. 72555, 72556 (Dec. 6, 2002) (Exhibit 18).  This is because,

> The distinction between avoidance of risk through regulation and compensation for injuries after the fact is a fundamental one.  In the former, risk assessments may lead to control of a toxic substance even though the probability of harm to any individual is small and the studies necessary to assess the risk are incomplete . . . .  In the latter, a far higher probability (greater than 50%) is required since the law believes it is unfair to require an individual to pay for another's tragedy unless it is shown that it is more likely than not that he caused it.

*Id.* (quoting *In re "Agent Orange" Product Liability Litigation*, 597 F.Supp. 740, 781 (E.D.N.Y. 1984), *aff'd.,* 818 F.2d 145 (2nd Cir. 1987)).

## VI.        CONCLUSION AND PRAYER

Many plaintiffs and some commentators have complained that requiring reliable proof of causation places an unfair burden on plaintiffs in cases like this.  Some argue "that liability should not be allocated only on the basis of reliable proof of fault because legal rules should have the goals of 'risk spreading, deterrence, allocating costs to the cheapest cost-avoider, and encouraging socially favored activities," and because "'consumers of American justice want people compensated.'"  *Havner*, 953 S.W.2d at 728.  These commentators imply that by requiring real science to support a causation claim, courts somehow are dodging the ball: "Deferring to scientific judgments about fault only obscures the core policy questions that are addressed by the laws that the court is applying."  *Id.,* 953 S.W.2d at 728 (citing Rochelle

Cooper Dreyfuss, *Is Science a Special Case?  The Admissibility of Scientific Evidence After Daubert v. Merrell Dow*, 73 TEX. L. REV. 1779, 1795-96 (1995) (quoting Kenneth R. Reinberg, *Civil Litigation in the Twentieth-First Century:  A Panel Discussion*, 59 BROOK. L. REV. 1199, 1206 (1993)).

But the Texas Supreme Court was not persuaded:  "We expressly reject these views." *Havner*, 953 S.W.2d at 728.  The Court observed that:

> Our legal system requires that claimants prove their cases by a preponderance of the evidence.  In keeping with this sound proposition at the heart of our jurisprudence, the law should not be hasty to impose liability when scientifically reliable evidence is unavailable.

*Id.*

Scientifically reliable evidence is unavailable in this case.  The Texas Plaintiffs therefore have no evidence of causation as a matter of Texas law.  Hoffmann La Roche Inc. and Roche Laboratories Inc. request that this Court enter summary judgment as to all of the Texas Plaintiffs' claims under Federal Rule of Civil Procedure 56(c).  These defendants pray for any further relief to which they may be justly entitled.

Respectfully submitted,


By:    /s/ *Mary R. Pawelek*
Kenneth J. Ferguson
kjf@ctw.com
Mary R. Pawelek
mrp@ctw.com
Susan E. Burnett
seb@ctw.com
CLARK, THOMAS & WINTERS, P.C.
P.O. Box 1148
Austin TX 78767
Tel: 512-472-8800
Fax:512-474-1129

Edward A. Moss
Florida Bar No. 057016
emoss@shb.com
Rafael Cruz-Alvarez
Florida Bar No. 989861
ralvarez@shb.com
SHOOK, HARDY & BACON, L.L.P.
Miami Center, Suite 2400
201 South Biscayne Boulevard
Miami FL 33131-4322
Tel: 305-358-5171
Fax:305-358-7470

Michael X. Imbroscio
COVINGTON & BURLING
1201 Pennsylvania Avenue NW
Washington, D.C. 20004-2401
Tel: 202-662-6000
Fax:202-662-6291

**ATTORNEYS FOR DEFENDANTS
HOFFMANN LA-ROCHE INC. AND
ROCHE LABORATORIES INC.**

18

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of April, 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following:

**PATTON, ROBERTS,**
**MCWILLIAMS & CAPSHAW, L.L.P.**
James C. Wyly
400 Century Plaza
2900 St. Michael Drive
Texarkana, Texas 75503

**BAILEY/CROWE & KUGLER, L.L.P.**
Todd H. Ramsey
6550 Bank of America Plaza
901 Main Street
Dallas, Texas 75202

**HOOK, BOLTON, KIRKLAND & MCGHEE, P.A.**
Michael D. Hook
Jefferson Office Park
3298 Summit Blvd., Suite 22
Pensacola, Florida 32503-4350
**ATTORNEYS FOR PLAINTIFFS**

**WICKER, SMITH, O'HARA, MCCOY,**
**GRAHAM & FORD, P.A.**
Dennis M. O'Hara
Richards Ford
Sun Trust Center, Suite 1400
515 East Las Olas Boulevard
Fort Lauderdale, Florida 33301
**ATTORNEYS FOR DEFENDANTS F. HOFFMANN-LA ROCHE**
**LTD. AND ROCHE HOLDING LTD**

**MORGAN & MORGAN**
Donald Buckler
101 East Kennedy Blvd., Suite 1790
Tampa, Florida 33602-5147
**MDL LIAISON COUNSEL**

_/s/ **Mary R.  Pawelek**_

19