## IN THE UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:                                         **MDL #1626**

ACCUTANE PRODUCTS LIABILITY              CASE #8:04-MD-02523-T-30TBM

---

KENNETH LOCKE, JUSTIN SISSEN,
MARY FARR AND LACY FECHNER
vs.                                            #8:04-cv-02641-JSM-TBM
HOFFMAN-LA ROCHE INC. AND
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

KEITH HUBBARD, KENNETH
CANNADY, ASHLEY GUYTON,
AND ADAM LEONARD
vs.                                            #8:04-cv-02642-JSM-TBM
HOFFMAN-LA ROCHE, INC.,
ROCHE LABORATORIES INC.,
F. HOFFMAN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

GARRETT STEPHENS, PETER
DEMBOWSKI, MARK RODNITZKY,
PHILLIP JEFF BARNHILL, AND
ANDREW MESSICK
vs.                                            #8:04-cv-02643-JSM-TBM
HOFFMAN-LA ROCHE INC.
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

JARED STEVENS
vs.                                            #8:05-cv-01478-JSM-TBM
HOFFMAN-LA ROCHE INC. AND
ROCHE LABORATORIES INC.,
F. HOFFMANN-LA ROCHE, LTD.,
AND ROCHE HOLDING, LTD.

# TABLE OF AUTHORITIES

## A. CASES

**Page No.**

Benedi v. McNeil-P.P.C., Inc.,
    66 F.3d 1378 (4th Cir.1995) ..................................................................6

Birdsell v. United States,
    346 F.2d 775, 779-780 (5th Cir. 1965) .............................................6

Burroughs Welcome Co. v. Crye,
    907 S.W.2d 497 (Tex.1995).................................................................3

Cano v. Everest Minerals Corp.,
    362 F.Supp.2d 814 (W.D.Tex. 2005)................................................ 4-5

Celotex Corp. v. Catrett,
    477 U.S. 317 (1986)..............................................................................2

Coastal Tankships, U.S.A. v. Anderson,
    87 S.W.3d 591 (Tex.App.-Houston [1st Dist.] 2002)........................5

Daubert v. Merrell Dow Pharms., Inc.,
    43 F.3d 1311 (9th Cir.) cert. denied 516 U.S. 869 (1995) .................5

E.I. du Pont de Nemours & Co. v. Robinson,
    923 S.W.2d 549 (Tex.1995).................................................................5

Exxon Corp. v. Makofski,
    116 S.W.3d 176, 182-183 (Tex. App. Houston [14 Dist.] 2003)........4

Great West Cas. Co. v. Garza,
    2006 WL 24608056 (Tex. App.-Corpus Christi)...............................2

Harbin v. Seale,
    461 S.W.2d 591 (Tex.1970)..................................................................2

J. Geils Band Employee Benefit Plan v. Smith Barney Sherason, Inc.,
    76 F.3d 1245 (1st Cir. 1996)................................................................2

Jarell v. Park Cities Carpet and Upholstery Cleaning, Inc.,
    53 S.W.3d 901 (Tex. App.-Dallas, 2001) ............................. 4, 5-6, 9

McCullock v. H.B. Fuller Co.,
    61 F.3d 1038 (2nd Cir. 1995) ..............................................................6

_Merrell Dow Pharmaceuticals, Inc. v. Havner,_
    953 S.W.2d 706 (Tex. 1997)......................................................... 1, 2, 3-4, 5, 8, 11

_Minnesota Min. and Mfg. Co. v. Atterbury,_
    978 S.W.2d 183 (Tex. App.- Texarkana 1998).....................................................4

_Revels v. Novartis,_
    1999 WL 644732 (Tex. App.-Austin).................................................................3

_Transportation Ins. Co. v. Moriel,_
    879 S.W.2d 10 (Tex.1994).................................................................................3

_U.S. v. Martinez,_
    1999 WL 33290655 (W.D.Tex.)......................................................................6, 9

_Wal-mart Stores, Inc. v. Rodriguez,_
    92 S.W.3d 502 (Tex. 2002)................................................................................2

## B. MISCELLANEOUS

Reference Manual on Scientific Evidence,
    Second Edition, Federal Judicial Center (2000) ......................................... 10-11

Robert W. Calvert, _"No Evidence" and "Insufficient Evidence" Points of Error,_
    38 Tex. L.Rev. 361, 362-63 (1960) ...................................................................2

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

IN RE:                                                    MDL #1626

**ACCUTANE PRODUCTS LIABILITY**
_____/


**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY**
**JUDGMENT AS TO TEXAS PLAINTIFFS BASED ON NO EVIDENCE OF**
**CAUSATION UNDER TEXAS SUBSTANTIVE LAW AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW Plaintiffs, by and through their undersigned attorneys, and hereby file their

Response to Defendants' Motion for Summary Judgment as to Texas Plaintiffs Based On No

Evidence Of Causation Under Texas Substantive Law,[1] and would respectfully show unto the

Court as follows:

**I.     Summary of Argument**

Defendants file their Motion for Summary Judgment As To Texas Plaintiffs Based On

No Evidence Of Causation Under Texas Substantive Law ("Defendants' Motion") based wholly

on the misapplication of Texas law. They incorrectly argue that under *Merrell Dow*

*Pharmaceuticals, Inc. v. Havner,* Plaintiffs must produce reliable epidemiological studies

showing a statistically significant doubling of the risk of a condition in drug-exposed individuals

in order to raise a fact issue regarding causation.  953 S.W.2d 706, 714 (Tex. 1997). Defendants'

reading of *Havner* is misplaced, and their argument is misleading.  Plaintiffs will demonstrate to

_____

[1] Defendants file their motion as to all claims of Kenneth Cannady, Mary E. Farr, Lacy Fechner, Andrew Messick, Jared Stevens, and Beth Parker on behalf of Kenneth Locke, deceased.
_____

the Court that their expert's opinions, as well as the information used to reach his conclusions, are reliable and, therefore, are sufficient to defeat Defendants' Motion for Summary Judgment.

## II.    Summary Judgment Standard

A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact by either (1) submitting summary judgment evidence that negates the existence of material element of plaintiff's claim, or (2) showing there is no evidence to support an essential element of plaintiff's claim.  *J. Geils Band Employee Benefit Plan v. Smith Barney Sherason, Inc.*, 76 F.3d 1245, 1251 (1st Cir. 1996); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 2552 (1986).  A defendant cannot rely on conclusory statements to establish that plaintiff has not presented evidence on an essential element of his or her claim. Rather, a defendant must demonstrate the absence of a genuine factual dispute.  *See Celotex Corp.*, 477 U.S. at 327, 106 C.Ct. at 2555.

When considering a no evidence motion for summary judgment, courts look at all of the evidence in a light most favorable to the nonmoving party *and* disregard all evidence and inferences to the contrary. *Great West Cas. Co. v. Garza,* 2006 WL 24608056 (Tex. App.-Corpus Christi, 2006); *Wal-mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex. 2002); *Havner*, 953 S.W.2d at 711 (Tex. 1997).  A no evidence point will be sustained only when (a) there is a complete absence of evidence of a vital fact, (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact.  *Havner* 953 S.W.2d 706, 711 (Tex. 1997); *Harbin v. Seale,* 461 S.W.2d 591, 592 (Tex.1970); Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error,* 38 Tex. L.Rev. 361, 362-63 (1960).  More than a scintilla of evidence

exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Burroughs Welcome Co. v. Crye,* 907 S.W.2d 497, 499 (Tex.1995) (quoting *Transportation Ins. Co. v. Moriel,* 879 S.W.2d 10, 25 (Tex.1994). Here, as Plaintiffs will demonstrate, the evidence clearly raises a genuine issue of material fact as to whether Accutane causes irritable bowel disease ("IBD").

### III.   Defendants Misstate Texas Law in an Attempt to Mislead the Court

*Havner*, the case upon which Defendants rely, dealt with the issue of whether Bendictin ingested by a mother, while pregnant, caused her child's limb reduction. 953 S.W.2d at 708. In that case, evidence of causation was overwhelmingly lacking. The FDA investigated the concerns but failed to conclude that Bendictin increased the risk of birth defects. *Id.* One of the plaintiff's experts in that case concluded from epidemiological studies that there was an association between Bendictin and birth defects, despite the fact that the authors of the studies could not find such an association. *Id.* at 724-725. The experts also attempted to use general studies on birth defects, but did not present to the court any study specifically dealing with limb reduction. *Id.* at 725. Finally, another expert for the plaintiffs concluded that none of the published epidemiological studies found an association between the drug and limb reduction, and even criticized the methodology of the studies. *Id.* It is no surprise that the court laid down a guideline that would help determine if epidemiological studies *by themselves* were evidence of causation *in that case*. *See Revels v. Novartis,* 1999 WL 644732 at *4 (Tex. App.-Austin)(not designated for publication)("*Havner* spoke specifically to the epidemiological evidence offered in that case").

Contrary to Defendants' emphatic assertions in their motion, the Texas Supreme Court in

*Havner* <u>did not</u> set forth a unique Texas requirement that plaintiffs in toxic injury cases "produce reliable epidemiologic studies showing a statistically significant doubling of the risk of the condition in drug-exposed individuals" in order to survive a sufficiency of the evidence review. *See* Defendants' Motion pg. 1. Instead, *Havner* simply held that epidemiological studies **may be part** of the plaintiffs' general causation evidence, and suggested a **totality of the evidence standard** in stating:

> We emphasize that courts must make a determination of reliability from all the evidence. Courts should allow a party, plaintiff or defendant, to present the best available evidence, assuming it passes muster under *Robinson,* and only then should a court determine from a <u>totality of the evidence</u>, considering all factors affecting the reliability of particular studies, whether there is legally sufficient evidence to support a judgment. *Id.* at 717, 720 (emphasis added).

Clearly, Defendants wholly misinterpreted and misapplied Texas law in an attempt to mislead the Court in this case.

Moreover, Defendants wholly ignored Texas case law that crystallized the interpretation of *Havner.* Case law dating as far back as 1998 states, "the court [in *Havner*] refused to set any strict rules regarding what types of evidence would be sufficient or not sufficient to support a finding of causation. There is no requirement in a toxic tort case that a party must have reliable epidemiological evidence of a relative risk of 2.0 or greater." *Minnesota Min. and Mfg. Co. v. Atterbury,* 978 S.W.2d 183, 198 (Tex. App.- Texarkana 1998)(emphasis added); *Jarell v. Park Cities Carpet and Upholstery Cleaning, Inc.,* 53 S.W.3d 901 (Tex. App.-Dallas, 2001)(rejecting Defendants argument to sustain directed verdict since no epidemiological studies were available to prove causation. Plaintiff's experts' differential diagnosis was enough evidence to reverse trial court's decision); *Exxon Corp. v. Makofski,* 116 S.W.3d 176, 182-183 (Tex. App. Houston [14 Dist.] 2003); *Cano v. Everest Minerals Corp.,* 362 F.Supp.2d 814, 820 (W.D.Tex. 2005)("[T]he

Fifth Circuit has not held that epidemiological prod is a necessary element in all toxic tort cases").

### IV.      Getting It Right: The Correct Interpretation of Texas Law

In *Havner*, the court incorporated several reliability standards to determine what constitutes evidence sufficient to combat a no evidence motion for summary judgment. *Havner* at 712. The court first addressed *Robinson* and *Daubert* in stating: [2]

> In *Robinson*, we set forth some of the factors that courts should consider in looking beyond the bare opinion of the expert.  Those factors include: (1) the extent to which the theory has been or can be tested; (2) the extent to which the technique relies upon the subjective interpretation of the expert; (3) whether the theory has been subjected to peer review and publication; (4) the technique's potential rate of error; (5) whether the underlying theory or technique has been generally accepted as valid by the relevant scientific community; and (6) the non-judicial uses that have been made of the theory or technique. *See Robinson,* 923 S.W.2d at 557.   The issue in *Robinson* was admissibility of evidence, but as we have explained <u>the same factors may be applied in a no evidence review of scientific evidence</u>." *Id.* (emphasis added).

In this case, Plaintiffs have adequately addressed reliability standards as set forth above in their responses to Defendants' various Daubert challenges, which we incorporate by reference herein.

The court also referenced the Bradford-Hill criteria used by Plaintiffs' expert Dr. Ronald Fogel as a "sound methodology generally accepted by the current scientific community." *Id.* at 718. The Bradford Hill criteria are as follows:  (1) strength of association; (2) consistency; (3) specificity; (4) temporality; (5) biological gradient; (6) plausibility; (7) coherence; (8) experiment; and (9) analogy.  *Id.* at 719.

Texas courts have also stated that differential diagnosis concluding causation, such as the one conducted in this case, is sufficient evidence to raise a genuine issue of material fact. *Jarell,* 53 S.W.3d 901 (Tex. App.-Dallas, 2001)(evidence from a treating physician who relied on

---

[2] *E.I. du Pont de Nemours & Co. v. Robinson,* 923 S.W.2d 549, 558 (Tex.1995); *Daubert v. Merrell Dow Pharms., Inc.,* 43 F.3d 1311, 1316 (9th Cir.), *cert. denied,* 516 U.S. 869, 116 S.Ct. 189, 133 L.Ed.2d 126 (1995).

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT AS TO TEXAS PLAINTIFFS BASED
ON NO EVIDENCE OF CAUSATION UNDER TEXAS
SUBSTANTIVE LAW AND BRIEF IN SUPPORT**                    **Page 5 of 12**

differential diagnosis, published an article in the area of concern and treatment of patients in a similar area was enough to overturn trial court's directed verdict on causation). *See also Coastal Tankships, U.S.A. v. Anderson,* 87 S.W.3d 591 (Tex.App.-Houston [1st Dist.] 2002)("Differential diagnosis is the basic method of internal medicine and enjoys widespread acceptance in the medical community"); *U.S. v. Martinez,* 1999 WL 33290655 (W.D.Tex.)(states that testimony from experts who based their opinions on their review of medical records, professional literature available in the area of concern, and on their educations, training and experience was sufficient evidence since medical professionals relied on the same methodologies in the course of diagnosing patients); *Benedi v. McNeil-P.P.C., Inc.,* 66 F.3d 1378, 1384 (4th Cir.1995); *McCullock v. H.B. Fuller Co.,* 61 F.3d 1038, 1043-1044 (2nd Cir. 1995); *Birdsell v. United States,* 346 F.2d 775, 779-780 (5th Cir. 1965)("[T]he physician making a diagnosis must necessarily rely on many observations and tests performed by others and recorded by them; records sufficient for diagnosis in the hospital ought to be enough for opinion testimony in the courtroom").

Differential diagnosis "is a clinical process whereby a doctor determines which of several potential diseases or injuries is causing the patient's symptoms by ruling out possible causes-by comparing the patient's symptoms to symptoms associated with known diseases, conducting physical examinations, collecting data on the patient's history and illness, and analyzing that data-until a final diagnosis for proper treatment is reached." *Jarell,* 53 S.W.3d 901. Coupled with a biological plausibility analysis, a differential diagnosis can be evidence of causation. *See generally Coastal Tankships, U.S.A.,* 87 S.W.3d 591 (Tex.App.-Houston [1st Dist.] 2002).

---

### V.      Totality Of The Evidence: Plaintiffs Evidence Is Clearly Sufficient To Defeat Defendants Misleading Motion

In the pending litigation, unlike the Bendectin cases that lead to the *Havner* decision, there is a substantial amount of reliable scientific evidence that supports Dr. Fogel's opinion regarding general causation.

### A. Plaintiffs Present Sufficient Evidence From A Qualified Expert

It should first be noted that Dr. Ronald Fogel is an expert in the field of gastroenterology and in particular IBD. He has vast experience in scientific research, teaching and clinical practice in this field. Specifically, Dr. Fogel has experience with Accutane both clinically and academically. His distinguished credentials have been provided to this Court and have not been challenged. As noted therein, Dr. Fogel has been practicing as a Board certified gastroenterologist for over twenty-five years.

Dr. Fogel gained extensive knowledge of scientific methodology and acceptable approaches to evaluating issues such as disease etiology and particularly the etiology of IBD. Dr. Fogel has drawn on this experience in developing the medical opinion he offers in this litigation, noting "[t]he methodology I used in performing my analysis of the issues herein are the same as those I have utilized throughout my career in research, publishing peer review articles, and in actually serving as a peer reviewer for journals related to Gastroenterology." Exhibit A, at 2. Dr. Fogel presents in his report a cohesive explanation of his opinion that Accutane causes IBD. He does not "invent causation" as Defendants contend, but rather lays out in detail a firm basis for his opinions, which is consistent with the means by which experts typically reach conclusions on causation.

**B. The Means By Which Dr. Fogel Reached His Conclusions Satisfy Texas Case Law**

**1. The Bradford Hill Methodology**

In his report, Dr. Fogel outlines in detail the approach he took and factors he considered in developing his opinions on Accutane and IBD. Those factors and his approach are consistent with the Bradford Hill methodology, which is followed by general causation experts and acknowledged by the Texas Supreme Court as being reliable.  See *Havner* at 718-719 (referring to Bradford Hill as "sound methodology generally accepted by the current scientific community").

Referring to Bradford Hill specifically, Dr. Fogel undertook a rigorous analysis in this case by: 1) considering the strength of the association between Accutane and IBD and noting the occurrence of damage to gastrointestinal mucosa as seen in the earliest studies supporting the patent and early clinical trials (Fogel Report at 3-4)[3]; 2) addressing consistency and specificity through his thorough review of the literature, internal Roche documents, animal studies, case reports, and what clinical trial evidence existed, all of which consistently discussed damage to the mucosal lining of the gastrointestinal system and development of IBD symptoms as a result of Accutane use (Exhibit A at 6); 3) addressing temporal association by thorough analysis of challege/dechallenge reports and dose response relationship analysis (Exhibit A at 3, 6); 4) by engaging in a biological plausibility analysis and appropriately citing to studies, the effects of similar pharmaceutical drugs, and drawing on his extensive knowledge and experience as a renowned gastroenterologist to provide biological explanations for the causal connection between Accutane and IDB. (Exhibit A at 4-6). He also reviewed Roche documents ACC 07008528-07008748;  ACC  07021119-07021123  which  indicated  that  preclinical  testing

---

[3] Dr. Fogel's report is attached hereto as exhibit A.

demonstrated clear biological plausibility for an individual developing IBD as a result of using Accutane. (Exhibit A at 6).

## 2. Differential Diagnosis

Dr. Fogel clearly understands the concept of differential diagnosis which has been accepted in Texas courts as a reliable means to determine causation. Deposition of Dr. Ronald Fogel, December 13, 2006, pg. 159 lns. 10-21.[4] Specifically, doctor Fogel reviewed the medical records and medical and personal histories of the Texas Plaintiffs, determined that the patients suffered from IBD, and specifically addressed and ruled out other possible causes of their condition based on medical literature and his experience in the clinical field.[5] *See Jarell v. Park Cities Carpet and Upholstery Cleaning, Inc.,* 53 S.W.3d 901 (Tex. App.-Dallas, 2001)(testimony form physician on causation based on his experience of treating hundreds of patients with conditions similar to plaintiff's condition was held sufficient evidence to prove causation); *U.S. v. Martinez*, 1999 WL 33290655 (W.D.Tex.)(Stated that evidence from their experts that they based their causation opinions on review of medical records, professional literature available in the area of concern, and on their educations, training, and experience was sufficient evidence of causation).

## 3. Dr. Fogel's Use of Roche's Internal Documents In Support Of Causation

The Defendants would have the Court believe that Dr. Fogel only considered internal Roche case studies, which they incorrectly contend "are no evidence of general causation." In so doing, they once again attempt to mischaracterize the extent of the evidence that supports

---

[4] Attached hereto as Exhibit B.
[5] For example, see Report of Dr. Ronald P. Fogel, M.D. for Lacy Fetchner, Exhibit C, pgs. 9-10; Dr. Fogel's Deposition In the Matter of Lacy Fechner, Exhibit D, p. 29 ln. 18-p. 30 ln. 6; p. 54 lns 14-21; p. 57 ln 16-p 58 ln.10; pg. 68 lns. 13-23 (where Dr. Fogel specifically analyzed and ruled out cigarette smoking, use of antibiotics and use of oral contraceptives as potential causes of IBD based on medical literature and years of clinical experience).

Plaintiffs' position. Contrary to Defendants' position, Plaintiffs contend that case reports can be considered as evidence of general causation where other evidence suggesting causation is present. Dr. Fogel not only relied on case reports, but also on the results of Hoffman-La Roche pre-clinical trials, the results of Hoffman-La Roche clinical trials wherein "almost one hundred percent of the people involved in the clinical trials developed at least one side effect directly as a result of this drug. In fact, over ninety percent of those individuals experienced gastrointestinal symptoms." Exhibit A at 3. He considered reports provided to Hoffman-La Roche regarding the numerous side effects which occurred in individuals after ingesting Accutane, including the Peter Schifferdecker report. *Id.* at 4. Roche's acknowledgement of the biological possibility throughout its documents including, but not limited to its package insert, cannot be ignored. *Id.* He also considered MedWatch reports which were submitted to the FDA by Hoffman-La Roche regarding challenge/dechallenge reports relating to Accutane use and IBD, and animal studies conducted by Hoffman-La Roche. *Id.* at 6; Deposition of Dr. Ronald Fogel, December 13, 2006, pg. 49 lns. 12-17. Dr. Fogel goes on to say:

> I have reviewed documents that were produced by Hoffman-La Roche, Inc. and Roche Laboratories including those documents attached to the deposition of Dr. Martin Huber, Eileen Leach, Dr. Joseph Hong, John McClain, and Dr. Alan Bess. Those documents are identified as Exhibit D. Those documents clearly acknowledge that Hoffman-La Roche and Roche Laboratories, hereafter Roche referred to inflammatory bowel disease as being causally related to the use of Accutane. Roche's own internal documents and analysis acknowledge that Roche has concluded that its drug Accutane, is a known cause of inflammatory bowel disease. (Exhibit A at 7).

Case reports are among the lines of evidence typically relied upon in considering issues of causation. <u>Reference Manual on Scientific Evidence</u>, Second Edition, Federal Judicial Center (2000) at 469. The typical case report describes the patient, her individual circumstances, the

onset of the disease, and the plausibility of the link between the exposure and disease. While case reports have limitations, they are recognized evidence "when considered in light of other information available." *Id*. at 475. This approach is consistent with *Havner's* mandate to courts to determine the sufficiency of evidence "from a totality of the evidence, considering all factors affecting the reliability of particular studies." *Havner,* at 720.

## CONCLUSION

In sum, contrary to the Defendants' misinterpretation of Texas law, the totality of Plaintiffs' evidence is clearly sufficient to raise a genuine issue of material fact regarding causation when considered in a light most favorable to Plaintiffs. Accordingly, Plaintiffs respectfully ask the Court to deny Defendants' Motion for Summary Judgment As To Texas Plaintiffs Based On No Evidence Of Causation Under Texas Substantive Law.

Respectfully submitted,

By: /s/ James C. Wyly
State Bar No. 22100050
**PATTON, ROBERTS, McWILLIAMS &
CAPSHAW, L.L.P.**
2900 St. Michael Drive
Texarkana, Texas 75503
Telephone:  (903) 334-7000
Facsimile:  (903) 334-7007

**ATTORNEYS FOR PLAINTIFFS**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 4th day of May, 2007, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to counsel of record.

Respectfully submitted,

By: /s/ James C. Wyly
State Bar No. 22100050
**PATTON, ROBERTS, McWILLIAMS &
CAPSHAW, L.L.P.**
2900 St. Michael Drive
Texarkana, Texas 75503
Telephone:  (903) 334-7000
Facsimile:  (903) 334-7007

**ATTORNEYS FOR PLAINTIFFS**