IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE: | MDL #1626 |
| ACCUTANE PRODUCTS LIABILITY | CASE #8:04-MD-02523-JSM-TBM |

---

| | |
|---|---|
| KENNETH LOCKE, JUSTIN SISSEN, MARY FARR AND LACY FECHNER | |
| vs. | #8:04-cv-02641-JSM-TBM |
| HOFFMAN-LA ROCHE, INC. AND ROCHE LABORATORIES INC., F. HOFFMAN-LA ROCHE, LTD., AND ROCHE HOLDING, LTD. | |

---

| | |
|---|---|
| GARRETT STEPHENS, PETER DEMBOWSKI, MARK RODNITZKY, PHILLIP JEFF BARNHILL, AND ANDREW MESSICK | |
| vs. | #8:04-cv-02643-JSM-TBM |
| HOFFMAN-LA ROCHE INC., ROCHE LABORATORIES INC. F. HOFFMAN-LA ROCHE, LTD., AND ROCHE HOLDINGS, LTD. | |

---

**TEXAS IBD PLAINTIFFS LOCKE, MESSICK AND FARR'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROXIMATE CAUSE**

## TABLE OF AUTHORITIES

**FEDERAL CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505 (1986). ............................... 3
*Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11thCir. 2007) .......................................... 3
*McNeil v. Wyeth*, 462 F.3d 364 (5thCir. 2006). ................................................................ 7, 8

**STATE CASE**

*Alm v. Aluminum Co. of America*, 717 S.W.2d 588 (Texas 1986)............................7

**RULES**

Fed. R. Civ. P. 56(c). ............................................................................................................ 2
Fed. R. Civ. P. 56(e) ............................................................................................................. 3

IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| IN RE: | MDL #1626 |
| ACCUTANE PRODUCTS LIABILITY | CASE #8:04-MD-02523-JSM-TBM |

| | |
|---|---|
| KENNETH LOCKE, JUSTIN SISSEN, MARY FARR AND LACY FECHNER | |
| vs. | #8:04-cv-02641-JSM-TBM |
| HOFFMAN-LA ROCHE, INC. AND ROCHE LABORATORIES INC., F. HOFFMAN-LA ROCHE, LTD., AND ROCHE HOLDING, LTD. | |

| | |
|---|---|
| GARRETT STEPHENS, PETER DEMBOWSKI, MARK RODNITZKY, PHILLIP JEFF BARNHILL, AND ANDREW MESSICK | |
| vs. | #8:04-cv-02643-JSM-TBM |
| HOFFMAN-LA ROCHE INC., ROCHE LABORATORIES INC. F. HOFFMAN-LA ROCHE, LTD., AND ROCHE HOLDINGS, LTD. | |

**TEXAS IBD PLAINTIFFS LOCKE, MESSICK AND FARR'S RESPONSE TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PROXIMATE CAUSE**

## I.     INTRODUCTION

Because Defendants' (hereinafter "Roche") did not provide adequate, legally sufficient warnings to Plaintiffs or Plaintiffs' treating physicians, genuine issues of material fact remain as to whether the physicians would have adequately informed Plaintiffs of the risks caused by Accutane, had Roche's labels been legally sufficient.[1] Roche makes a circular argument that ignores the basic premises of the learned intermediary doctrine. Roche wants the benefit of the "learned intermediary" doctrine while depriving physicians (the "learned intermediaries") with the very information that would have informed the physicians of the very risks eventually suffered by the physicians' patients who are the plaintiffs in this suit. Essentially, the learned intermediary allows a manufacturer of a drug to pass on the risks of the drug to physicians who then pass on the risks of the drug to their patients. It is not reasonable for Roche to expect to escape liability using this doctrine when Roche did not pass on the risks of Accutane to these physicians through its labels. Without knowing the risks of Accutane, the physicians could not have passed on the risks of Accutane to their patients, who are the plaintiffs herein. Roche is the only entity that can make these physicians "learned." Roche cannot withhold the very information that would make these physicians "learned" and expect to take advantage of the learned intermediary doctrine.

## II.     SUMMARY JUDGMENT STANDARD

Summary Judgment is only proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A dispute about a material fact is genuine "if the evidence is such that a

---

[1] Plaintiffs' are filing a Response to Roche's Motion for Summary Judgment on the Adequacy of Warnings and incorporate that Response herein.

2

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). The moving party has the burden of pointing to deficiencies in the record as to matters upon which the opposing party has the burden of proof such that the opposing party cannot prove its claim or defense of showing otherwise why, upon the undisputed facts in the record, the moving party is entitled to judgment as a matter of law. Once the moving party has carried its burden, the non-movant, "must set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e), *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. In deciding a motion for summary judgment, the court construes all facts and inferences in the light most favorable to the non-moving party. *Bircoll v. Miami-Dade County*, 480 F.3d 1072 (11thCir. 2007).

### III. ROCHE IS NOT ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFFS' WARNINGS CLAIM.

#### A. Facts

##### 1. Andrew Messick

Andrew Messick took Accutane from October 1994 through April 1995 and was diagnosed with ulcerative colitis in November 2002.[2] In October 1994, at the time Dr. James Allen prescribed Andrew Messick Accutane, Roche's label on adverse reactions to Accutane stated:

**WARNING**

Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately.[3]

---

[2] Deposition of Andrew Messick, (attached hereto as Exhibit A) at 183:2-14, 185:19-186:3, 252:8-10, 259:6-15.
[3] Expert Report of Cheryl D. Blume, Ph.D. (attached hereto as Exhibit B), p. 21.

3

This "temporally associated" warning, in practice, meant that "symptoms occurred while patients were receiving the drug."[4] Dr. Allen relied on Roche's labels when he prescribed Andrew Messick Accutane.[5] The package insert in effect at the time Dr. Allen prescribed Accutane to Andrew Messick does not mention ulcerative colitis as a possible adverse reaction to Accutane.[6] Roche changed the label in May 2000, six years after Andrew Messick began taking Accutane, to read:

> **ADVERSE REACTIONS:** Gastrointestinal
>
> Inflammatory bowel disease (see **WARNINGS** : Inflammatory Bowel Disease), hepatitis (see **WARNINGS**: Hepatotoxicity), pancreatitis (see **WARNINGS** : Lipids), bleeding and inflammation of gums, colitis, ileitis, nausea, other nonspecific gastrointestinal symptoms.[7]

As stated above, Andrew Messick developed ulcerative colitis in 2002. Accutane causes Inflammatory Bowel Disease/ulcerative colitis.[8]

Messick was treated for acne by Dr. James Allen, the Messick family's physician.[9] Dr. Allen recalls that Messick had moderately severe acne on his face and back.[10] Messick does not recall any discussion of side effects, other than the potential risks to pregnant women and dry skin and chapped lips. Andrew Messick relied upon Dr. Allen to tell him about the possible adverse effects of taking Accutane and on Dr. Allen's advice in taking Accutane.[11]

---

[4] *Id.* quoting Accutane Sales Desk Reference, 1996, McClain 069351.
[5] Deposition of Dr. James Allen (attached hereto as Exhibit C) at 29:19-22. .
[6] December 1993 Accutane Package Insert (Exhibit 2 to Deposition of Dr. James Allen) attached hereto as Exhibit D.
[7] Blume Report., at 24.
[8] Expert Report of Dr. Ronald P. Fogel (attached hereto as Exhibit E) at 8.
[9] Allen Dep. at 29:19-22.
[10] *Id.* at 41:15-17.
[11] Messick Dep. at 257:22-258:2.

### 2. Mary Farr

Mary Farr ingested Accutane from February 1999 through June 1999 and was diagnosed with Crohn's disease in June 2002.[12] In February 1999, at the time Dr. Scott Miller prescribed Mary Farr Accutane, Roche's label on adverse reactions to Accutane stated:

**WARNING**

> Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately.[13]

This "temporally associated" warning, in practice, meant that "symptoms occurred while patients were receiving the drug."[14] Accutane causes Crohn's disease.[15] The term Crohn's disease is still absent from Accutane's label.[16]

Dr. Miller determined Mary Farr had nodular acne lesions and evidence of past scarring, and had shown no improvement while on oral contraceptives.[17] Dr. Miller testified he prescribed Accutane for Mary Farr after weighing the risk and benefits of the drug.[18] Dr. Miller relied on Roche to provide accurate information regarding the side effects of its drugs and to fully disclose the side effects of drugs it marketed to him and his patients.[19] Mary Farr relied on Dr. Miller to tell her about the potential side effects and on Dr. Miller's advice in deciding whether or not to take Accutane.[20]

---

[12] Deposition of Mary Farr, (attached as Exhibit F) at 161:5-8, 18-20; 165:13-24.
[13] Blume Report, p. 21.
[14] *Id.* quoting Accutane Sales Desk Reference, 1996, McClain 069351.
[15] Fogel Report, at 8.
[16] Blume Report, at 24.
[17] Deposition of Dr. Scott Miller, (attached hereto as Exhibit G) at 10:24-25, 11:1-2, and 13:12-18.
[18] Miller Dep. at 52:25-53:9.
[19] Miller Dep. at 75:15-23.
[20] Farr Dep. at 173:1-7.

### 3. Kenneth Locke

Kenneth Locke was treated by Dr. Thomas Lyles, a dermatologist, for acne on October 15, 1998.[21] Dr. Lyles prescribed Accutane on December 1, 1998.[22] Locke was diagnosed with Crohn's disease in February 1999.[23] In December 1998, at the time Dr. James Allen prescribed Kenneth Locke Accutane, Roche's label on adverse reactions to Accutane stated:

**WARNING**

> Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately.[24]

This "temporally associated" warning, in practice, meant that "symptoms occurred while patients were receiving the drug."[25] Dr. Allen relied on Roche's labels when he prescribed Andrew Messick Accutane.[26] The package insert in effect at the time Dr. Allen prescribed Accutane to Andrew Messick does not mention Crohn's disease as a possible adverse reaction to Accutane.[27] Accutane causes Crohn's disease.[28] The term "Crohn's disease" is still absent from Accutane's label.[29]

Dr. Lyles determined Kenneth Locke had scarring acne.[30] Dr. Lyles prescribed Locke Accutane after weighing the risks and benefits of the drug.[31] Beth Parker, Kenneth Locke's mother, testified she and Kenneth would have relied on Dr. Lyles' advice as to

---

[21] Depostion of Dr. Thomas Lyles, (attached hereto as Exhibit H) at 36:10-12.
[22] *Id..* at 49:19-50:7.
[23] *Id.* at 51:22-52:16.
[24] Blume Report at 21.
[25] *Id.* quoting Accutane Sales Desk Reference, 1996, McClain 069351.
[26] Allen Dep. at 115:9-15, 117:15-18.
[27] 1998 Package Insert (Exhibit 3 to Dr. Lyle's Deposition) attached hereto as Exhibit I.
[28] Fogel Report, at 8.
[29] Blume Report, at 24.
[30] Lyles Dep. at 41:5-14.
[31] Lyles Dep. at 48:14-17.

whether or not to take Accutane.[32] Kenneth Locke committed suicide on November 19, 2004.

**B.  Genuine issues of material fact exist as to whether the physicians would have adequately informed Plaintiffs of the risks caused by Accutane, had Roche's label been legally sufficient.**

The Texas Supreme Court has addressed when a drug manufacturer is entitled to use the physician as a "learned intermediary" to defeat a products liability failure to warn claim:

> In some situations, courts have recognized that a warning to an intermediary fulfills a supplier's duty to warn ultimate consumers. For example, when a drug manufacturer properly warns a prescribing physician of the dangerous propensities its product, the manufacturer is excused from warning each patient who receives the drug. The doctor stands as an intermediary between the manufacturer and the ultimate consumer. Generally, only the doctor could understand the propensities and dangers involved in the use of a given drug. In this situation, it is reasonable for the manufacturer to rely on the intermediary to pass on its warnings. **However, even in these circumstances, when the warning to the intermediary is inadequate or misleading, the manufacturer remains liable for injuries sustained by the ultimate user.**

*Alm v. Aluminum Co. of America*, 717 S.W.2d 588, 591-92 (Texas 1986) (emphasis added). The learned-intermediary doctrine "presupposes that the physician will act as an intermediary." *McNeil v. Wyeth*, 462 F.3d 364, 373 (5thCir. 2006). Allowing a manufacturer to rely on a "learned intermediary" is not reasonable when the learned intermediary fails to pass necessary information to the patient because the manufacturer has understated the degree of risk. *Id.* "The mere presence of an intermediary does not excuse the manufacturer from warning those whom it should reasonably expect to be endangered by the use of its product." *Alm*, 717 S.W.2d at 591. For example, Roche's insufficient warnings of certain adverse reactions, including IBD/ulcerative colitis, to

---

[32] Deposition of Beth Parker, (attached hereto as Exhibit J), at 231:18-22.

7

Accutane meant Dr. Allen could not have adequately informed Andrew Messick of the risk of contracting ulcerative colitis from Accutane use. *See, e.g., McNeil*, 462 F.3d at 373. ("Where the physician would have adequately informed a plaintiff of the risks of a disease, had the label been sufficient, but fails to do so on that account ... the inadequate labeling could be a 'producing' cause of the injury, because it effectively sabotages the function of the intermediary.")

The evidence in the record so far demonstrates that Plaintiffs' injuries were proximately caused by the lack of adequate warnings concerning Accutane and IBD. Plaintiffs all took Accutane prescribed by their physicians. For example, at the time Dr. James Allen prescribed Andrew Messick in April 1994, Roche's label on adverse reactions to Accutane stated:

> **WARNING**
>
> Accutane has been temporally associated with inflammatory bowel disease (including regional ileitis) in patients without a prior history of intestinal disorders. Patients experiencing abdominal pain, rectal bleeding or severe diarrhea should discontinue Accutane immediately.[33]

This "temporally associated" warning, in practice, meant that "symptoms occurred while patients were receiving the drug."[34] Dr. Allen relied on this label when he prescribed Andrew Messick Accutane.[35] So, only after Accutane changed the adverse reactions section of its label could Dr. Allen have known that colitis was an adverse reaction to Accutane. Roche changed the label in May 2000, six years after Andrew Messick began taking Accutane to read:

---

[33] Blume Report, at 21.
[34] *Id.* quoting Accutane Sales Desk Reference, 1996, McClain 069351.
[35] Allen Dep. at 29:19-22. .

8

> **ADVERSE REACTIONS:** Gastrointestinal
>
> Inflammatory bowel disease (see **WARNINGS** : Inflammatory Bowel Disease), hepatitis (see **WARNINGS**: Hepatotoxicity), pancreatitis (see **WARNINGS** : Lipids), bleeding and inflammation of gums, colitis, ileitis, nausea, other nonspecific gastrointestinal symptoms[36]

Roche's label never warned Dr. Allen of colitis as possible adverse reaction to Accutane.

Roche's motion misses the point. Dr. Allen could only have been a "learned intermediary" in 1994, when he prescribed Accutane to Messick, had he known of adverse reactions such as: inflammatory bowel disease, pancreatitis, bleeding and inflammation of the gums, colitis, ileitis, nausea, and other nonspecific gastrointestinal symptoms. But, Roche did not inform Dr. Allen of these possible adverse reactions in 1994 through its labels. Roche's labels only asserted Accutane was "temporally associated" with Inflammatory Bowel Disease. Dr. Allen could only have known then, that some patients had symptoms of Inflammatory Bowel Disease while receiving Accutane. In fact, Inflammatory Bowel Disease/ulcerative colitis was an adverse reaction to Accutane. Dr. Allen simply did not know and could not have known that Inflammatory Bowel Disease/ulcerative colitis was an adverse risk to Accutane when he prescribed the drug to Andrew Messick.

Not surprisingly then, none Dr. Allen's testimony contains any mention of colitis at the time he prescribed Andrew Messick Accutane. The mentions of colitis during Dr. Allen's deposition relate to Andrew Messick's diagnosis of ulcerative colitis in 2002.[37] Dr. Allen relied on Roche's labels when he prescribed Andrew Messick Accutane.[38] Similarly, Dr. Miller testified he relied on Roche to provide accurate information

---

[36] Blume Report, at 24.
[37] Allen Dep., at 91-94, 101-105.
[38] *Id.* at 115:9-15, 117:15-18.

9

regarding the side effects of its drugs and to fully disclose the side effects of drugs it marketed to him and his patients.[39]

Plaintiffs have expert testimony that Roche's labels are inadequate and misleading.[40] Roche cannot on the one hand rely on a physician intermediary while on the other hand not provide the same physician intermediary with insufficient, inadequate, and misleading information about adverse reactions of its drug. Clearly, the learned intermediary doctrine is premised on the conclusion that the manufacturer of a product makes the intermediary "learned" by distributing proper information about the manufacturer's product. Roche has not done so here.

In other words, even though Dr. Allen testified that he assessed the risks and benefits when he prescribed Accutane to Andrew Messick, Roche's inadequate warnings made it impossible for Dr. Allen to fully conduct a risk benefit analysis at the time. Through no fault of his own, Dr. Allen is not a "learned intermediary." Therefore, Texas law does not allow Roche to rely on the learned intermediary doctrine here.

The same analysis is true for Plaintiffs Mary Farr and Kenneth Locke. Their treating physicians were not "learned intermediaries" because of the same inadequate warnings by Roche. Dr. Miller relied on Roche to provide accurate information regarding the side effects of its drugs and to fully disclose the side effects of drugs it marketed to him and his patients.[41] Farr and Locke both relied on their treating physicians as to whether or not to take Accutane. If Farr's and Locke's treating physicians did not know all the risk and benefits of Accutane because of Roche's inadequate labels and inserts they could not have passed on "learned" advice to Farr and

---

[39] Miller Dep. at 75:15-23.
[40] *See* Blume Report and Fogel Report.
[41] Miller Dep. at 75:15-23.

Locke. That is why Roche cannot use the learned intermediary defense to escape liability for Plaintiffs' injuries.

## IV. CONCLUSION

As set forth herein, genuine issues of material fact exist as to whether Defendants' warnings were legally sufficient and whether Defendants' warnings caused Plaintiffs' injuries. For the foregoing reasons, Defendants' motion for summary judgment should be denied.

Respectfully submitted,

/s/ James C. Wyly

By:_____
James C. Wyly
State Bar No. 22100050
jwyly@pattonroberts.com
**PATTON, ROBERTS, McWILLIAMS & CAPSHAW, L.L.P.**
2900 St. Michael Drive
Texarkana, Texas 75503
Telephone: (903) 334-7000
Facsimile: (903) 334-7007

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 7th day of May, 2007, I electronically filed the foregoing by using the CM/ECF system which will send a notice of electronic filing to counsel of record.